BOLIN, Judge.
Mid-South Finance & Thrift Company, Inc. sues John W. Cupit for $2000, together with interest and .attorney’s fees, allegedly due on a note executed by Cupit to Mid-South. Prior to this suit Cupit was adjudged bankrupt and the claim of Mid-South was listed in the bankruptcy proceeding. Defendant pleads the discharge as a bar to recovery. However, Mid-South contends Cupit willfully and wrongfully disposed of some of the chattels covered by the mortgage, securing payment of the note, which prevented the debt from being discharged. From judgment dismissing Mid-South’s action it appeals.
The note and chattel mortgage were executed by Cupit February 5, 1965, payable in one installment on May 5, 1965. Defendant was adjudged bankrupt on April 5, 1966, and the furniture listed in the mortgage was sold by the trustee in bankruptcy .to Mid-South for the cash sum of $35 and a bid of $250 and full satisfaction of its claim on April 5, 1966. The Discharge in Bankruptcy was dated April 28, 1966.
11 U.S.C.A. § 35 provides in part as follows :
“(a). A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) * * *; (2) * * *, or for willful and malicious injuries to the person or property of another, * *
It is undisputed that shortly after bankruptcy Mr. and Mrs. Cupit moved from Tallulah to Winnsboro, leaving the furniture in the rented residence in which they had resided. This residence was attached to the funeral home previously operated by defendant. The manager of Mid-South testified that, more than a year after the original mortgage and after he received notice of the bankruptcy proceeding, he had gone to Tallulah and defendant had conducted him through the house where he had observed the presence of each item listed on the chattel mortgage. At that time he picked up two or three items from the funeral home which appeared on the mortgage but did not pick up the household furniture. He testified his failure to take the furniture was due to his reliance on the alleged promise of Mr. Cupit to sign another note and pay for the items listed. Cupit denied making this promise and testified that, when called upon to sign the note, he had advised the manager to pick up the furniture in Tallulah.
Both Cupit and his wife testified they had left all the mortgaged property in the home; had locked the house when they moved away; that they took none of the furniture with them and neither of them knew what had become of it after they moved to Winnsboro. Cupit further testi *127 fied on cross-examination that his attorney had notified plaintiff by letter in April, 1966, the location of the furniture and advised that it could be picked up.
It was not until April or May of 1967 that Mid-South’s manager and another employee went to the funeral home to obtain the furniture. Meantime the home had been remodeled and the furniture was no longer in the house, although a few items were seen stored in the garage but were considered valueless and were left there.
Plaintiff relies on the holdings in Excel Finance Camp, Inc. v. Tannerhill, (La.App. 4 Cir.1962), 140 So.2d 202; and X-L Finance Company, Inc. v. Adams, (La.App. 1 Cir.1966), 187 So.2d 759. It is contended these cases hold the debtor has the burden of producing mortgaged chattels or explaining their whereabouts or be charged with wrongfully disposing, concealing or removing them from the jurisdiction in violation of 11 U.S.C.A. § 35. We have examined these cases and find them factually different from the instant case.
In the case before us the creditor determined the property was in the possession of the debtor at the time of the bankruptcy adjudication and, further, it bought the property from the trustee in bankruptcy who acknowledged as consideration therefor receipt of a sum of money and satisfaction of Mid-South’s claim. Thereafter, it became the responsibility of the creditor to preserve the property. Mid-South’s chief complaint is that Cupit failed to preserve this property for more than a year after Mid-South legally owned it. Since Cupit no longer owned the property he was charged only with the duty of notifying Mid-South of its location and availability. Ample notification to the creditor was established by uncontradicted testimony. The record is devoid of proof defendant “maliciously disposed of or damaged the property” of another in violation of 11 U.S.C.A. § 35.
The judgment of the lower court is affirmed at appellant’s cost.